UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JULIE W.,

                              Plaintiff,

v.                                                                          CASE # 20-cv-01042

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

Law Offices of Kenneth Hiller                 KENNETH R. HILLER, ESQ.
 Counsel for Plaintiff                                  SAMANTHA J. VENTURA, ESQ.
6000 North Bailey Ave
Suite 1A
Amherst, NY 14226


U.S. SOCIAL SECURITY ADMIN.             ELIZABETH ROTHSTEIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278


J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 8, 1980 and has at least a high school education. (Tr. 84, 254). Generally, plaintiff alleged disability due to conduct disorder, bipolar, depression, anxiety, panic attacks, mood swings, and violent behavior. (Tr. 253). Her alleged onset date of disability is December 31, 2009 and her date last insured is also December 31, 2009. (Tr. 249).

### B. Procedural History

On January 14, 2013, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 17). Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On February 9, 2015, plaintiff appeared before ALJ William Weir. (Tr. 44-83). On August 6, 2015, ALJ Weir issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 14-30). On December 2, 2016, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 2-4). Thereafter, plaintiff timely sought judicial review in this Court. On March 7, 2019, this Court remanded the case for further proceedings. (Tr. 1019). On May 3, 2019, the AC issued a remand order pursuant to this Court's order. (Tr. 1022). A second hearing was held on March 16, 2020, before ALJ Weir, who issued another unfavorable decision on April 8, 2020, finding plaintiff not disabled. (Tr. 974, 2482). Plaintiff directly appealed to this Court.

**C.    The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since December 31, 2009, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

2. The claimant has a substance use disorder, including heroin, Suboxone, alcohol, and cocaine; degenerative joint disease of the right shoulder; generalized anxiety disorder; and bipolar disorder, each of which constitutes a severe impairment (20 CFR 404.1520(c) and 416.920(c)).

3. Including the claimant's substance use, the severity of the claimant's impairments met the criteria of section 12.04 and 12.06 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d),416.925). However, the claimant's impairments, other than her substance use disorders, would improve if she were to stop using substances, would impose only mild to moderate limitations, and would limit her, but not prevent her, from performing light level work with the limitations noted below.

4. If the claimant stopped the substance use, the remining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments (20 CFR 404.1522 and 404.922).

5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(f) and 416.994(b)(5)(i)).

6. After careful consideration of the entire record, I find that, if the claimant stopped the substance use, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Light work is defined as being able to lift and/or carry 20 pounds occasionally, and lift and/or carry 10 pounds frequently, and being able to stand or walk for 6 hours per day in an eight-hour day and sit 6 hours per day in an eight-hour day. The claimant cannot work above shoulder level. With the right-dominant hand and arm, the claimant can lift ten pounds. With the left non-dominate upper extremity the claimant can lift 20 pounds occasionally and ten pounds frequently. The claimant could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant could occasionally kneel and crouch, but never crawl. The claimant should avoid work requiring exposure to vibrations and unprotected heights, dangerous machines, or dangerous chemicals. With the right hand, the claimant would be unable to use a screwdriver, or perform activities requiring torque or grip. The claimant could have occasional interaction with supervisors, coworkers, and the public.

7. The claimant does not have past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the clamant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. If the claimant stopped the substance use, considering the claimant's age, education, work experience and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he (sic) stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 954-974).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ's materiality finding is unsupported and he improperly evaluated plaintiff's mental impairments. Second, plaintiff argues the ALJ's RFC is unsupported by substantial evidence. (Dkt. No. 14 at 1 [Pl.'s Mem. of Law]).

### B. Defendant's Arguments

Defendant asserts the ALJ properly considered plaintiff's mental impairments and substantial evidence supports his finding that substance abuse was a factor material to the determination of disability. (Dkt. No. 15 at 6 [Def.'s Mem. of Law]).

### III.  RELEVANT LEGAL STANDARD

#### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

When there is medical evidence of a plaintiff's drug or alcohol abuse, the "disability" inquiry does not end with the five-step analysis. *See* 20 C.F.R. § 416.935(a). The ALJ must determine whether the plaintiff would still be "disabled if [she] stopped using drugs or alcohol." *Id*. § 416.935(b)(1); *see also id*. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the plaintiff's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). Plaintiff bears the burden of proving DAA immateriality. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

## IV.     ANALYSIS

### A.     Prior Arguments

In his 2015 decision, similar to his 2020 decision, ALJ Weir determined plaintiff met listings 12.06 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 but that if plaintiff stopped abusing substances her limitations would constitute a severe impairment but no longer meet or medically equal any impairment listing. (Tr. 1012-1013). ALJ Weir also found plaintiff's mental impairments all derive from her substance abuse issues, citing nearly normal findings on mental status examination when the claimant does not abuse drugs. (Tr. 992). When plaintiff appealed the 2015 decision to this Court, she argued that the ALJ relied on his lay opinion to determine her RFC because the ALJ failed to address medical evidence and opinions when evaluating her physical impairments. (Tr. 1013-1014). District Judge Vilardo remanded the case for a full evaluation of the medical opinions addressing plaintiff's physical impairments during the 2009-to-2013 time period. (Tr. 1017).

Despite representation by the same law firm since the first hearing, plaintiff did not raise any issue with the ALJ's analysis of the mental impairments or drug and alcohol (DAA) materiality finding until now. As stated above, the ALJ's sequential evaluation findings were the same for the listing and DAA materiality. The ALJ complied with the prior remand order as it pertained to the physical impairments, including solicitation of medical expert testimony from an orthopedic surgeon. Although Judge Vilardo's remand was directed to physical impairments questions, plaintiff curiously argues lack of opinion evidence for the mental impairments. However, despite the additional time of approximately five years between hearings, plaintiff never obtained or submitted any opinions from her treating sources. (Dkt. No. 14 at 24). Plaintiff does not present any evidence of error regarding the ALJ's assessment of her physical impairments this time.

B.   **DAA Materiality Finding**

Plaintiff argues the ALJ's materiality finding is unsupported and he improperly evaluated plaintiff's mental impairments. (Dkt. No. 14 at 17). When there is medical evidence of an applicant's drug or alcohol abuse, the disability inquiry does not end with the five-step analysis. *See* 20 C.F.R. § 416.935(a); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118 (2d Cir. 2012)). The materiality finding requires the ALJ to evaluate disability a second time to determine whether the individual would still be disabled if he or she stopped using drugs or alcohol. *Cordero v. Astrue*, 574 F. Supp. 2d 373, 378 (S.D.N.Y. 2008) (citing 20 C.F.R. § 416.935(b)(2)); *see also* 20 C.F.R. § 404.1535(b)(2). In order to find a claimant not disabled, SSR 13-2p requires that an ALJ have positive evidence showing that plaintiff's severe mental impairment would improve to the point of nondisability in the absence of her DAA.

Here, ALJ Weir found plaintiff's substance use material concluding that her mental impairments met listings 12.04 and 12.06, but if she stopped using substances, she would have only mild to moderate limitations. (Tr. 959, 973). The ALJ relied on periods of abstinence in supporting his materiality finding, however plaintiff argues there is evidence of continued marked limitations during those periods. (Dkt. No. 14 at 19). Periods of abstinence can be evidence used to determine if an impairment would improve to the point of nondisability. *See Mullen v. Berryhill*, No. 16-CV-476-FPG, 2017 WL 2728583, at *4 (W.D.N.Y. June 26, 2017), citing SSR 13-2p. The regulations describe a "period of abstinence" as a period of time in which "a claimant who has, or had, been dependent upon or abusing drugs or alcohol and stopped their use." SSR 13- 2p, fn. 17.

Plaintiff repetitively cites evidence which she maintains is substantial evidence of greater limitations than assessed by the ALJ. (Dkt. No. 14 at 17-20). In this case, the record was sufficiently developed for the ALJ to assess the effects of substance abuse on the plaintiff's

functioning and substantial evidence supported the ALJ's RFC finding for a reduced range of light work. ALJ Weir diligently complied with the prior remand order and plaintiff's disagreement with how the ALJ weighed the evidence is not sufficient for another remand. *See, e.g., Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder *would have to conclude otherwise*.") (citation, quotation omitted; emphasis original)); *Hill v. Berryhill*, No. 17-CV-6532P, 2019 WL 144920, at *8 (W.D.N.Y. Jan. 9, 2019) ("'[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [his] position.'") (internal alterations original; citation omitted)).

Plaintiff primarily argues that plaintiff's mental impairments still satisfied a listing during periods of abstinence from substance abuse and focuses on plaintiff's self-report of symptoms or isolated treatment notations in support of her argument. (Dkt. No. 14 at 19-23). However, the ALJ considered that evidence including plaintiff's abstinence from substances, and properly concluded that, when not abusing substances, plaintiff's mental impairments resulted in no more than mild or moderate limitations, and she retained the capacity to perform a reduced range of light work that involved occasional interaction with supervisors, coworkers, and the public. (Tr. 959-68). Medical records show plaintiff has not always been forthcoming with her substance use and have shown inconsistencies with her allegedly sober periods and plaintiff references evidence from those periods. For instance, plaintiff points to treatment notes from November 14, 2017 and April 10, 2018, documenting her complaints that she isolated herself and wanted to be alone. (Dkt. No. 14 at 20-21, 25, *citing* Tr. 1875, 2003). However, these visit notes also reflect plaintiff's reports of recent cocaine relapses, and being out of prescribed medication for several days. (Tr. 967, 1874-

75, 2003; *see also* Tr. 2043 (April 20, 2018 note of plaintiff's admission to having used methamphetamine about two weeks earlier)). Plaintiff points to several treatment notes dated between July 2018 and February 2019, indicating that she was angry or had emotional outbursts. (Dkt. No. 14 at 20-21, 25, *citing* Tr. 1301, 1304, 1360, 1370, 1373, 1375, 2073). However, these visits were also during a period in which plaintiff was again abusing substances (intravenous Suboxone and methamphetamine) or was receiving residential stabilization or rehabilitation services for recent substance abuse. (Tr. 962, 967, 1279, 1289, 1291, 1294, 1301, 1359-60, 1370-75, 1388, 2073). Plaintiff also admitted to stopping prescribed Celexa in November 2018, and she was not taking any other medication for her mental health. (Tr. 962, 967, 1209). Moreover, in late February 2019, when she was nearing the end of her residential substance abuse treatment, plaintiff was noted to have made some progress in handling her emotions, and her significant other reported noticing positive changes, such as plaintiff's ability to manage her anger. (Tr. 962, 968, 1377, 1402, 1404).

ALJ Weir appropriately identified records during periods of abstinence where mental health limitations were improved. The ALJ cited a period of abstinence in 2016, which documented largely normal mental status examination findings, including cooperative attitude, appropriate grooming and dress, normal speech, linear and goal directed thought process, no paranoid thoughts, and grossly intact memory, attention, and concentration. (Tr. 960, 967-68, 1915-16, 1918-19, 1933, 1944, 1957-58). However, it is noted that even during this period from January 2016 to about August 2016, plaintiff was not even fully abstinent because of a heroin relapse in late February 2016, positive test for morphine in September 2016, and she reported on February 22, 2017 that she had been using cocaine daily for the past six months (i.e., since approximately August 22, 2016). (Tr. 960, 967, 1740, 1908, 1912, 1951, 1967).

It was also appropriate for the ALJ to consider plaintiff's ability to maintain employment as an events specialist, and eventually supervisor in May 2016, during the period of relative sobriety. (Tr. 958, 960-61, 963, 967, 971). *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (noting that while plaintiff's work during the relevant period did not meet the threshold for substantial gainful activity, he worked at levels consistent with light work). Indeed, plaintiff complained to her counselor that she was at times anxious at work and still did not like people, but she nevertheless reported that she was able to tolerate people, she continued to work, and she was "actually loving her job." (Tr. 960-61, 963, 967, 1914-16, 1918). Accordingly, although this work activity may not have risen to the level of substantial gainful activity for more than 12 months (see Tr. 958, 1158, 1160), it nevertheless supports the ALJ's RFC finding that she has a RFC to perform light work if plaintiff stopped the substance abuse.

Plaintiff's complaints to her providers that she did not enjoy her work and had difficulty focusing at work does not establish she was unable to perform the RFC and unskilled jobs identified by the vocational expert. At the November 7, 2016, medication management visit during which plaintiff complained of difficulty focusing at work, the physician's assistant noted grossly intact attention and concentration on examination, but nevertheless gave plaintiff an Adderall prescription. (Tr. 960-61, 1955, 1958). Again, plaintiff may have accurately reported during this visit that she maintained abstinence from heroin, but she later admitted that she was using cocaine daily during this time. (Tr. 1741, 1955-56, 1958). Even though plaintiff lost her job the following year, in 2017, due to a new company taking over the workload of her company, plaintiff's counselor recommended ACCESS-VR vocational rehabilitation services for her interest in cosmetology. (Tr. 967, 1158, 1160, 2003-04). *Camille v. Colvin*, 652 F. App'x 25, 27 n.2 (2d Cir. 2016) (finding ALJ's attribution of little weight to treating physician's opinion was supported by

11

substantial evidence including physician's own clinical notes, which included recommendation that plaintiff participate in Vocational and Education Services for Individuals with Disabilities); *Poupore*, 566 F.3d at 305-06 (ALJ's determination that plaintiff was not disabled was supported by substantial evidence, including report of plaintiff's treating physician stating that he would be an excellent candidate for vocational rehabilitation).

Further, the ALJ considered plaintiff's ability to regain visits with her children and eventually custody during the period of abstinence. (Tr. 961, 963, 967, 1915-16, 1918, 1932-33, 1943, 1947). *Poupore*, 566 F.3d at 307 (finding ALJ correctly considered ability to perform daily activities, including caring for a household and child). Although working full-time she reported going for walks, enjoying time with her daughter, attending self-help group meetings, and caring for herself. (Tr. 961, 963, 967, 970, 1943-44, 1946). The plaintiff testified she had difficulty in crowds of six or more people, and the ALJ accordingly did limit her RFC to occasional interaction with coworkers, supervisors, and the public. (*See* Tr. 960, 964, 968, 2496-97).

Plaintiff also points to counseling notes indicating that she was frustrated and irritated when sober. (Dkt. No. 14 at 20-21, 25, *citing* Tr. 1925, 1928, 1952). However, the May 24, 2016 treatment note indicates that plaintiff was responding to the situation of having her children in the care of her aunt in Florida but that despite the stressor, plaintiff reported that she was walking her dog more and being more active with things she used to do. (Tr. 961, 967, 970, 1925-26). The June 9, 2016 treatment note cited by plaintiff does not mention any irritability and instead notes that plaintiff appeared subdued with constricted affect and less eye contact and that although she lacked enthusiasm and complained of having little free time, plaintiff nevertheless reported that she was "doing well," working (often six days per week, 30-35 hours), cooking, attending weekly Narcotics Anonymous meetings, and frequently talking with her children. (Tr. 961, 967-68, 1928-29). The

third note cited by plaintiff, from September 20, 2016, indicates that plaintiff was irritated about testing positive for morphine (which she alleged she was not using), but she was in other respects "doing ok, still working." (Tr. 960, 1951-52; *see also* Tr. 1741 (indicating that she was actually using cocaine by this time)).

It is the claimant who bears the burden of proving that her drug addiction is not a material factor. *See Smith*, 731 F. App'x at 30; *Cage*, 692 F.3d at 123-25; 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935. It is also the claimant who has the burden of proving that her mental impairments met or equaled a listing, and that she had additional RFC limitations that were greater than those found by the ALJ. *See Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."). A review of the ALJ's decision and the record shows that the ALJ appropriately considered the record evidence, and plaintiff has not demonstrated, as was her burden, that substance abuse was not a material factor. The ALJ properly considered the evidence in the record relating to plaintiff's mental impairments, and substantial evidence, including the treatment records, plaintiff's work activity, and her other activities of daily living, supported the ALJ's finding that substance abuse was a factor material to the determination of disability.

### C.     Opinion Evidence

Plaintiff finally contends the RFC is not supported by substantial evidence because there is no medical opinion evidence pertaining to materiality of the substance abuse. The Second Circuit has rejected plaintiff's argument and held that an RFC may be supported by substantial evidence, even if it does not correspond to any particular medical opinion. *See Matta v. Astrue*, 508 F. App'x

53, 56 (2d Cir. 2013) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render a RFC finding consistent with the record as a whole).

Specific to the issue of DAA, the Court has repeatedly held that a medical opinion is not necessary. *See Cage*, 692 F. 3d at 126-27 (recognizing that an ALJ may find that substance abuse is a contributing factor material to the determination of disability, even where the record does not contain a medical opinion addressing the issue); *Wettlaufer v. Colvin*, 203 F.Supp.3d 266, 277 (W.D.N.Y. 2016) (rejecting plaintiff's argument that ALJ could not find her alcohol abuse was a contributing factor in the absence of any medical opinion addressing the issue); Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *12 (providing that, in considering the documentation of a period of abstinence, an ALJ "may draw inferences" from the information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

**GRANTED**.

Dated: 12/22/2021  
Rochester, New York

*J. Gregory Wehrman*   J.A.W.
HON. J. Gregory Wehrman  
United States Magistrate Judge